## AS TO THE QUALIFICATION OF A COUNCILMAN WITH RESPECT TO RESIDENCE.

Circuit Court of Cuyahoga County.

STATE OF OHIO, EX REL FRED WEBER, v. FRANK HATHAWAY.

Decided, November 19, 1908.

*Officers—Residence Required of City Councilmen.*

1. The residence which is required by Section 1536-613, Revised Statutes, to qualify one to hold the office of city councilman, is the residence which is required to qualify one as an elector.
2. Where a councilman removes outside the state to accept employment, without any fixed intent either to stay or return, the office which he has held does not thereby become vacant.

*Green & Zmunt*, for plaintiff.
*Deutsch, Howells & Grossman*, contra.

HENRY, J.; MARVIN, J., concurs.

The ouster of a village councilman from his office is sought by this proceeding, the turning point of which is whether a vacancy therein was caused by the removal from the village or by the subsequent resignation of the prior incumbent. In the

former case the relator, who is the mayor's appointee, is entitled to the office. In the latter case the defendant, who is incumbent under the council's appointment, is entitled to it.

We intimated our possible conclusion at the close of the hearing this morning, but we took the case under advisement for the sole purpose of confirming our *prima facie* impression, that the removal from the municipality contemplated by Section 1536-613, Revised Statutes, had not been made by councilman Wagner in such manner as to render his office vacant.

We have examined some of the authorities, and have paused to look again over the brief of counsel, or citation of authorities, handed us a few moments ago, to determine whether or not there were any cases there that put a different complexion on the matter, other than the cases we had already examined; and we are prepared now to confirm the intimation we gave this morning upon the subject.

The section so far is it bears upon the narrow question on which we had evidence this morning, is:

"Councilmen at large shall have resided in their respective cities, and councilmen from wards shall have resided in their respective wards, for at least one year next preceding their election. Every member of council shall be an elector of the city. Any member who shall cease to possess any of the qualifications therein required, or shall remove from his ward, if elected from his ward, or from the city, if elected from the city at large, shall forthwith forfeit his office."

Our impression this morning was, and it is confirmed by our subsequent inquiry, that the residence which is required by this section of the statutes, for the purpose of maintaining the right to hold the office of councilman, is precisely the residence which is required to qualify a person as an elector. There is a hint, of course, of tautology in the language of the statute, "Any member who shall cease to possess any of the qualifications therein required," that is, ceasing to be an elector of the city, and the other requirement in the same sentence, "or shall remove from his ward, if elected from his ward, or from the city, if elected from the city at large." That is to say, there is a hint in this language, that possibly the same thing is said twice,

that it was unnecessary to say anything about removal, if the requirement of being an elector were observed; and the argument is suggested from that hint of tautology, that possibly the Legislature meant something different when it undertook to say that removal from the ward or city would also work a vacancy in the office. But on further investigation, it appears that this language is not open to the charge that it is tautological, on the interpretation we place upon it, for the reason that we must consider this statute as applying not only to villages where all the councilmen are elected at large and where the question of residence in a ward is of no account, but also to cities divided into wards, where residence in a given ward is one of the qualifications of a councilman. In other words, applying this section to the case of a city, it may well be true that one holding the office of councilman might continue to be an elector of the city, though removal from the ward would work a vacancy in his office as councilman.

Now what are the qualifications which an elctor must ·possess in regard to residence? What has been the history of our legislation on this subject, as bearing upon removal? In this connection, holding as we do that the qualifications of councilmen in respect of residence resemble those of electors. we refer to the case of *Lehman* v. *McBride,* 15 O. S., 573, where, in the opinion of the court, at pages 600 and 601 reference is made to the act of 1841, being an act "to preserve the purity of elections," wherein the word "residence" is thus defined:

"*First*: That place shall be considered and held to be the residence of the person, in which his habitation is fixed, without any present intention of removing therefrom; and to which, whenever he is absent, he has the intention of returning."

We note particularly the use of that word "removing," which is exactly the word we are discussing and to which our attention has been called. And again, in the same opinion, further quoting from the act of 1841, this language is used:

"A person shall not be considered or held to have lost his residence who shall leave his home and go into another state or county of this state for temporary purposes merely, with an intention of returning."

Now the evidence which was adduced this morning is, of course, somewhat in conflict. It is noticeable that Mr. Wagner does not undertake to contradict (perhaps on account of lack of memory on his part) the testimony of the witness in whose home he used the telephone as to said Wagner's language both then and after the telephone conversation was finished. Moreover it is, to say the least, left in very grave doubt whether he had ever formed any intention whatever different from that which the law imputes to him in regard to where his residence was fixed when he left the state of Ohio to go into the service of the electric railroad which operates between Baltimore and Annapolis. Employment is not presumptively permanent, nor was this by any means certainly so. All the circumstances go to show that while he entertained some doubt in his mind as to what his future might be, still he did not form any definite intention, as we view the evidence, of renouncing his then existing residence and acquiring a new and definite residence elsewhere. If he had presented himself as an elector at the polls at the election next following his return, supposing the same conditions existed as at the time he returned to his mother's home, can it be doubted that he would have had the right to cast his vote; that his vote would have been received? We think not. We think that clearly under these circumstances, his vote would have been allowed, unless some different evidence had been produced to the election officers from that which has been produced to us.

We are not unmindful of all that counsel urge regarding the rule as expressed in *Sturgeon* v. *Korte,* 34 O. S., 534 and 535. We appreciate that though a person may not have any fixed determination to renounce his previous home, when he leaves the home where he has theretofore lived, yet, he may, by forming a determination in that behalf, after he leaves, accomplish the same result; that is, he may change his residence definitely by a determination conceived and fixed in his mind after his departure. But there is no evidence here as to what his state of mind became after he left Ohio, except this letter of resignation; outside of this we have absolutely no light on the subject at all. In his letter he expresses some doubt as to whether or

when he will return. Certainly it is not indicated that he had theretofore come to a fixed determination to renounce his former home and to acquire a new one. We do not attach any specific importance to the use of the word "home" because that is the most natural word to use, in common parlance, when referring to the home of one's parents. Taking the whole matter of the letter together, the entire language of the letter, he does not herein express any fixed determination to renounce his lawful residence and to acquire a new one. We are unable to say, amid the conflict of oral testimony, that the preponderance of evidence is in favor of the proposition that he had renounced his home, but we are, on the contrary, inclined to infer from the evidence affirmatively that he had not so done. That being our inference of fact our determination necessarily is favorable to the relator, and the judgment of this court will be that the defendant, Frank Hathaway, be and he is ousted from his office as councilman of the village of South Newburg, and the relator inducted into that office. There is no other dispute as to the validity of the relator's election, as indicated in the answer of the defendant.